IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOES 1 THROUGH 7,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE TALIBAN, AL-QAEDA,<br>and THE HAQQANI NETWORK,<br><br>*Defendants.* | Misc Action No. 1:21-MC-00110 |

## RESPONSE TO PRAECIPE

Plaintiffs, John Does 1 though 7, were victims of a massive bomb attack by the Taliban, Al-Qaeda, and the Haqqani Network in Kabul, Afghanistan on January 4, 2016. They brought suit against them, and on November 5, 2020, were awarded nearly 140 million dollars for their injuries. *See* Final Default Judgment, *John Does 1 through 7 v. the Taliban, et al.,* No. 20-00605 (N.D. Texas Nov. 5, 2020), Dkt. No. 22). On August 20, 2021, they registered their judgment in this district. DE 1.

The International Monetary Fund ("IMF") holds in this district international reserve assets ("SDRs") belonging to the Islamic Republic of Afghanistan and payable to Da Afghanistan Bank, which is now controlled by and is thus an agency or instrumentality of the Taliban. On August 18, 2021, the IMF blocked the Taliban from obtaining access to the SDRs and other IMF resources. On August 23, 2021, Plaintiffs served the IMF with a Writ of Attachment on Judgment other than Wages, Salary and Commissions (the "Writ") requiring the IMF "to hold and not to pay or surrender" assets it held of the defendants "or the agency or instrumentality of the Defendant as defined by Section 201(a) of the Terrorism Risk Insurance

Act of 2002, 28 U.S.C. § 1610 note, including but not limited to Da Afghanistan Bank." *See* Writ attached hereto as Exhibit A.

Plaintiffs filed an Affidavit of Process Server attesting to service of the Writ on August 29, 2021.  DE 4.  The IMF had ten days after the August 23, 2021 service of the Writ to respond to the interrogatories appurtenant to it according to D.C. Code §§16-521(a).  Otherwise, the IMF would be liable for the amount of the judgment according to D.C. Code §16-526(b).

Rather than respond to the Writ, which announced that the attachment was made pursuant to The Terrorism Risk Insurance Act, 28 U.S.C.S. § 1610 note ("TRIA"), the IMF ignored it.[1] Thus, Plaintiffs are entitled to judgment against the IMF for the amount of the judgment.  On October 12, 2021, Plaintiffs filed a motion seeking to impose such judgment on the garnishee, the IMF, for failing to respond to the Writ.  DE 6.

On October 15, 2021, the IMF filed a Praecipe arguing that it is immune from every form of judicial process pursuant to its Articles of Agreement, which are codified at 22 U.S.C. § 286 *et seq*.  DE 8.

In fact, international organizations such as the IMF do not enjoy absolute immunity, but rather the same immunities enjoyed by foreign governments at any given time, which immunity is currently governed by the FSIA.  *Jam v. Int'l Fin. Corp.,* 139 S. Ct. 759 (2019).

---

[1] While the method of service was clearly appropriate, if the IMF wished to challenge the method of service or claim immunity, the proper course would have been to challenge the service in district court, not simply ignore the service. *Novak v. World Bank*, 227 U.S. App. D.C. 83, 703 F.2d 1305, 1310 (1983) (reversing district court's dismissal of claim against World Bank, and stating "the World Bank, if it claimed service was improper, should have contested the validity of service and asserted that it was not amenable to suit in the district court, as, indeed, it asserted in appellant's prior actions.")

TRIA, which is codified within the FSIA section concerning exceptions to immunity, overrides any prior-enacted contrary provision of law that would prevent the execution against the assets of a terrorist judgment debtor, or the assets of a central bank agency or instrumentality of that judgment debtor.[2]  *See Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006) ("TRIA, which was enacted later in time than [28 U.S.C.] § 1611, overrides the immunity conferred in § 1611").  It provides for execution or attachment "notwithstanding *any* other provision of law".  TRIA, Section 201(a), emphasis added.  Indeed, the intent of the "notwithstanding" language in TRIA is "to target statutory exceptions to immunity,"  *Id. at* 498 quoting *United States v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771, 787 (5th Cir. 2006).

TRIA was passed on November 26, 2002.  The Bretton Woods Agreement, which was passed on July 31, 1945, predates TRIA, and so was clearly overridden by it for that narrow band of cases concerning collection of judgments against terrorist states and entities, for which TRIA provided an exception to immunity.  The IMF should not be dismissed; rather, judgment should be entered against it.

        Respectfully submitted,

        **do Campo & Thornton, P.A.**
        Chase Bank Building
        150 S.E. 2nd Avenue, Ste. 602
        Miami, Florida 33131
        Telephone: (305) 358-6600
        Facsimile: (305) 358-6601

        By:    s/ *John Thornton*
                   John Thornton
                   DC Bar No. 980680
                   jt@dandtlaw.com

---

[2] Since a foreign state or its central bank cannot invoke sovereign immunity to shield against TRIA execution, it follows that an international organization cannot derivatively invoke those same immunities.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  No service is required on Defendants the Taliban, Al-Qaeda, and the Haqqani Network, which are in default for failing to appear. *See* Fed. R. Civ. P. 5(a)(2).

s/ *John Thornton*
John Thornton
