IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOES 1 THROUGH 7,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE TALIBAN, AL-QAEDA, and<br>THE HAQQANI NETWORK,<br><br>　　　　Defendants. | Misc. Action No. 1:21-mc-00110-DLF |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE INTERNATIONAL MONETARY FUND'S MOTION TO DISMISS**

November 1, 2021

James R. Newland, Jr. (DC Bar No. 477804)
Bret C. Marfut (DC Bar No. 888144675)
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004
Telephone: (202) 463-2400
Facsimile:  (202) 828-5393
jnewland@seyfarth.com
bmarfut@seyfarth.com

*Attorneys for the International Monetary*
*Fund, Appearing Specially*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................... 1
II. BACKGROUND ..................................................................................................... 2
    A. The Fund and its absolute immunity from judicial process .................................. 2
    B. Plaintiffs' writ of attachment and attempts at service............................................ 3
    C. The Fund's Praecipe and Plaintiffs' response........................................................ 3
III. ARGUMENT............................................................................................................ 4
    A. The Court should dismiss this garnishment proceeding under Rule
       12(b)(1) for lack of subject-matter jurisdiction ...................................................... 4
       1. The Rule 12(b)(1) standard ............................................................................. 4
       2. Under its Articles of Agreement, the Fund is entitled to absolute
          immunity, which deprives the Court of subject-matter jurisdiction ........... 5
       3. Neither the TRIA nor the IOIA abrogates the Fund's immunity................ 8
       4. The Fund's immunity from suit renders Plaintiffs' efforts to serve it
          ineffective ........................................................................................................ 11
    B. CONCLUSION....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank Markazi v. Peterson*,
   136 S. Ct. 1310 (2016) ............................................................................................................9

*Conyers v. Westphal*,
   235 F. Supp. 3d 72 (D.D.C. 2017) .........................................................................................5

*Curran v. Holder*,
   626 F. Supp. 2d 30 (D.D.C. 2009) .........................................................................................5

*EM Ltd. v. Republic of Argentina*,
   473 F.3d 463 (2d Cir. 2007) ...................................................................................................6

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ..........................................................................................................10

*Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*,
   280 F.Supp.2d 314 (S.D.N.Y.2003), aff'd, 346 F.3d 264 (2d Cir. 2003) ................................9

*Garcia v. Sebelius*,
   919 F. Supp. 2d 43 (D.D.C. 2013) .......................................................................................12

*Gordon v. Office of the Architect of the Capitol*,
   750 F. Supp. 2d 82 (D.D.C. 2010) .........................................................................................5

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C.2001) ............................................................................................5

*\*Jam v. Int'l Fin. Corp.*,
   139 S. Ct. 759 (2019) ..........................................................................1, 2, 5, 6, 7, 10, 11

*Jam v. Int'l Fin. Corp.*,
   442 F. Supp. 3d 162 (D.D.C. 2020) .......................................................................................8

*\*Kissi v. de Laroisiere*,
   No. 82-1267 (D.D.C. June 23, 1982) .....................................................................................7

*\*Leonard A. Sacks & Associates, P.C. v. Intl. Monetary Fund*,
   CV 20-2266, 2021 WL 1166738 (D.D.C. Mar. 26, 2021), *appeal filed*, No.
   21-7034 (D.C. Cir. Mar. 6, 2021) ...........................................................................................7

*Letelier v. Republic of Chile*,
   748 F.2d 790 (2d Cir. 1984) ...................................................................................................9

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ............................................................................................................. 12

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
    551 U.S. 644 (2007) ............................................................................................................. 10

*\*Nyambal v. Int'l Monetary Fund*,
    772 F.3d 277 (D.C. Cir. 2014) ........................................................................ 1, 5, 6, 7, 10, 11, 13

*\*Polak v. Int'l Monetary Fund*,
    657 F. Supp. 2d 116 (D.D.C. 2009), *appeal dismissed*, No. 09-7114, 2010 WL
    4340534 (D.C. Cir. Oct. 20, 2010) ..................................................................................... 4, 7

*Raynor v. D.C.*,
    296 F. Supp. 3d 66 (D.D.C. 2017) ....................................................................................... 12

*Rubin v. Islamic Republic of Iran*,
    138 S. Ct. 816 (2018) .......................................................................................................... 8, 9

*Sisso v. Islamic Republic of Iran*,
    448 F. Supp. 2d 76 (2006) ................................................................................................... 13

*Stoll v. Liuksila*,
    No. PS 3346-097F (D.C. Super. Ct. Sept. 30, 2003) ............................................................ 7

*Tootle v. Secretary of the Navy*,
    446 F.3d 167 (D.C. Cir. 2006) .............................................................................................. 5

*United States v. Ballestas*,
    795 F.3d 138 (D.C. Cir. 2015) ............................................................................................ 10

*Wyatt v. Syrian Arab Republic*,
    83 F. Supp. 3d 192 (D.D.C. 2015) .................................................................................... 9, 13

**Statutes**

22 U.S.C. § 286 ............................................................................................................................. 1

22 U.S.C. § 286h ....................................................................................................................... 2, 5

22 U.S.C. § 288a(b) ................................................................................................................. 6, 11

28 U.S.C. § 1604 ........................................................................................................................... 8

28 U.S.C. § 1605A ........................................................................................................................ 9

28 U.S.C. § 1609 ....................................................................................................................... 8, 9

28 U.S.C. § 1610 .................................................................................................................. 1, 8, 9

United States Code title 28 section 1605(a)(7) .................................................................................9

Bretton Woods Agreements Act ...................................................................1, 2, 3, 4, 5, 6, 10, 11

Foreign Sovereign Immunities Act .......................................................................1, 3, 8, 9, 10, 11

International Organizations Immunities Act ...............................................................1, 3, 6, 8, 11

60 Stat. 1401 ..................................................................................................................................2

116 Stat. 2337, note § 201(a) ................................................................................................4, 8, 9

Terrorism Risk Insurance Act ..........................................................................1, 3, 8, 9, 10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 4(l) ......................................................................................................................12

Fed. R. Civ. P. 12(b)(1) .................................................................................................................4

**I.   INTRODUCTION**

The International Monetary Fund's ("Fund") absolute immunity from "every form of judicial process" is enshrined in its Articles of Agreement, which have the force of law in the United States under the Bretton Woods Agreements Act ("BWAA"), 22 U.S.C. § 286, et seq. Those immunity provisions have been authoritatively interpreted by the Supreme Court and the D.C. Circuit Court of Appeals, and those decisions compel the dismissal of the Fund from this garnishment proceeding. *Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 280 (D.C. Cir. 2014); *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 771–72 (2019).

Nevertheless, Plaintiffs suggest that the Terrorism Risk Insurance Act ("TRIA") abrogates the Fund's absolute immunity in this case. Not so. TRIA is an exception to immunity otherwise enjoyed by *foreign states* under the Foreign Sovereign Immunities Act ("FSIA")—that is why TRIA appears in the FSIA statutory scheme. 28 U.S.C. § 1610 (Note). Plaintiffs try to get around this fact by suggesting that the FSIA defines the scope of immunity for international organizations under the International Organizations Immunities Act ("IOIA"). Whatever the validity of that position, it is irrelevant here: the Fund's immunity is governed by its Articles, *not* the IOIA. *Jam*, 139 S. Ct. at 771–72. In other words, the Fund here invokes its own unique, independent immunity under the Articles and the BWAA—*not* the immunity of the underlying sovereign (Afghanistan), whatever that may be under TRIA, and *not* the default immunity of international organizations under the IOIA.

Based on the Fund's absolute immunity, the Court lacks subject-matter jurisdiction over this matter, and the Fund cannot be effectively served. Accordingly, the case against the Fund must be dismissed.

## II. BACKGROUND

### A. The Fund and its absolute immunity from judicial process

The Fund is one of the main international organizations established in the wake of World War II to help its member countries pursue their collective goal of rebuilding the international economy. *Jam*, 139 S. Ct. at 765. Its purposes include, *inter alia*, promoting international monetary cooperation, facilitating the expansion and balanced growth of international trade, promoting exchange stability among its 190 member countries, and providing temporary financial assistance to its member countries experiencing balance of payments difficulties. *See* Articles of Agreement, Art. I.[1]

To facilitate those purposes, the Fund's Articles of Agreement grant the Fund absolute immunity from judicial process in the courts of its member countries:

> *Immunity from judicial process.* The Fund, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract.

Articles of Agreement, Art. IX, Section 3. The Articles are a treaty executed by the United States, 60 Stat. 1401; 2 UNTS 39. The Articles also obligate "[e]ach member [to] take such action as is necessary in its own territories for the purpose of making effective in terms of its own law the principles set forth in [Article IX] and [to] inform the Fund of the detailed action which it has taken." Art. IX, Section 10. The BWAA achieves this by giving Article IX, Sections 2 to 9, statutory force in the United States. *See* 22 U.S.C. § 286h.

---

1 The current version of the IMF's Articles of Agreement is available at http://www.imf.org/external/pubs/ft/aa/index.htm.

2

### B. Plaintiffs' writ of attachment and attempts at service

John Does 1 through 7 ("Plaintiffs") secured a default judgment totaling $138,418,741 against the Taliban, Al-Qaeda, and the Haqqani Network in the United States District Court for the Northern District of Texas. (Final Default J., Dkt. No. 1-1.) On September 17,[2] this Court issued a Writ of Attachment on Judgment other than Wages, Salary and Commissions ("Writ") purporting to seize the value of Plaintiffs' judgment from the Fund and directing the Fund to respond to interrogatories within 10 days. (Writ, Dkt. No. 9-1.)

Several days after the Writ was issued, Plaintiffs' process server attempted to serve the Fund by leaving documents at the feet of a security guard outside the Fund's Washington, D.C. headquarters. Security guards employed by a company (a contractor) hired to protect the Fund's headquarters, however, are not authorized to accept service of process—in fact, the Fund is immune from service by virtue of the immunities bestowed by the BWAA.

### C. The Fund's Praecipe and Plaintiffs' response

On October 12, Plaintiffs moved for a default judgment against the Fund and the International Bank for Reconstruction and Development ("IBRD"), another purported garnishee, for the value of their underlying judgment. (Mot. Default. J. ("Motion"), Dkt. No. 6.) The Fund responded with a letter to Plaintiff's counsel explaining the Fund's absolute immunity, noting that Plaintiffs had not served (and could not serve) the Fund, and urging counsel to withdraw the Writ and Motion. In the interest of keeping the Court aware of the situation, the Fund docketed the letter, along with a praecipe explaining it. (Praecipe, Dkt. No. 8; Letter, Dkt. No. 8-2.)

Plaintiffs did not withdraw their Writ or Motion. Instead, they filed a response, suggesting that TRIA, in conjunction with the IOIA and the FSIA, abrogates the Fund's immunity from this

---

[2] All dates are in 2021, except where otherwise indicated.

3

garnishment proceeding. The response also indicated that Plaintiffs seek "international reserve assets ('SDRs') belonging to the Islamic Republic of Afghanistan and payable to Da Afghanistan Bank, which is now controlled by and is thus an agency or instrumentality of the Taliban." (Response 1, Dkt. No. 9.)[3]

### III.   ARGUMENT

#### A.   The Court should dismiss this garnishment proceeding under Rule 12(b)(1) for lack of subject-matter jurisdiction

##### 1.   The Rule 12(b)(1) standard

The Fund's immunity under the BWAA "implicates the court's subject matter jurisdiction." *Polak v. Int'l Monetary Fund*, 657 F. Supp. 2d 116, 120 (D.D.C. 2009), *appeal dismissed*, No. 09-7114, 2010 WL 4340534 (D.C. Cir. Oct. 20, 2010). Thus, the Fund's assertion of absolute immunity "presents a threshold challenge to the Court's jurisdiction" and obligates the Court "to

---

[3] The merits of Plaintiffs' legal arguments—including whether a member country's Special Drawing Rights ("SDRs") are an asset held by the Fund at all, much less the sort of "blocked assets" Plaintiffs can attach under TRIA § 201(a)—are beyond the scope of this motion. The Fund's request for dismissal is based solely on the Fund's immunity from suit, and the Fund reserves all other defenses. Nevertheless, it is important to note that SDRs cannot be held by private entities or individuals such as the plaintiffs. SDRs are an international reserve asset created by the Fund to supplement the reserves of its member countries, in accordance with its Articles of Agreement. *See* Art. XV, Section 1 ("[t]o meet the need, as and when it arises, for a supplement to existing reserve assets, the Fund is authorized to allocate special drawing rights in accordance with the provisions of Article XVIII to members that are participants in the Special Drawing Rights Department."). The permitted holders of SDRs are specified in Article XVII, and there is no provision for private entities or individuals to hold SDRs. For more information about SDRs, *see* International Monetary Fund, Questions and Answers on Special Drawing Rights, available at https://www.imf.org/en/About/FAQ/special-drawing-right#Q2.%20What%20would%20a%20general%20SDR%20allocation%20achieve?  (Aug. 23, 2021) (last visited Oct. 23, 2021); *see also* International Monetary Fund, Special Drawings Rights (SDR) Factsheet, available at https://www.imf.org/en/About/Factsheets/Sheets/2016/08/01/14/51/Special-Drawing-Right-SDR (Aug. 5, 2021) (last visited Oct. 23, 2021).

4

determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).

In assessing subject-matter jurisdiction, the Court must take Plaintiffs' factual allegations as true. *Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 86 (D.D.C. 2010). But those allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C.2001). The court may also "consider materials outside of the pleadings." *Tootle v. Secretary of the Navy,* 446 F.3d 167, 174 (D.C. Cir. 2006); *Gordon,* 750 F. Supp. at 86. "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the case in its entirety." *Conyers v. Westphal*, 235 F. Supp. 3d 72, 76 (D.D.C. 2017) (citation omitted).

### 2. Under its Articles of Agreement, the Fund is entitled to absolute immunity, which deprives the Court of subject-matter jurisdiction

The Fund's Articles of Agreement immunize it from "every form of judicial process" except when the Fund "expressly waives" its immunity. Art. IX, Section 3; 22 U.S.C. § 286h. Consistent with that plain language, the Supreme Court, the D.C. Circuit, and this Court have repeatedly recognized that the Articles and the BWAA render the Fund absolutely immune from suit absent an express waiver, thereby depriving courts of subject-matter jurisdiction. *Jam.*, 139 S. Ct. at 771–72 ("[the Fund] enjoys 'immunity from every form of judicial process except to the extent that it expressly waives its immunity'); *id.* at 777 (Breyer, J. dissenting) ("Congress enacted a separate statute"—22 U.S.C. § 286h—"providing [the Fund] with immunity (absent waiver) in all cases.").

In *Nyambal*, for example, the plaintiff sued the Fund for an incident that occurred in leased space on the Fund's premises. The D.C. Circuit held that the Fund was absolutely immune from

5

judicial discovery in the plaintiff's tort action because the Fund had not expressly waived its immunity. 772 F.3d at 280–83. In so ruling, this Court observed that "the Fund is immune absent express waiver under its Articles of Agreement." *Id.* at 281.

"The sweep of the Fund's immunity," *Nyambal* further noted, "is *broader* than the protection afforded" to other international organizations by the International Organizations Immunity Act, 22 U.S.C. § 288a(b). *Id.* at 281 (emphasis added). That "'immunity, where justly invoked, shields defendants not only from the consequences of litigation's results but also from the burden of defending'" an action. *Id.* at 280-81 (*quoting Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981)).

More recently, the Supreme Court confirmed *Nyambal*'s observation that the IMF's Articles confer a *higher* level of immunity than the charters of other international organizations. *Jam*, 139 S. Ct. at 771-72 (noting the Fund's absolute immunity); *accord Jam*, 139 S. Ct. at 777 (Breyer, J., dissenting) ("Congress enacted a separate statute [Bretton Woods Agreements Act] providing [the IMF] with immunity (absent waiver) in all cases"). "If the work of a given international organization would be impaired by restrictive immunity," the Supreme Court observed, "the organization's charter can always specify a different level of immunity." *Id.* at 771. The Fund's charter, the Supreme Court specifically noted, "*do[es] just that*." *Id.* (emphasis added).

And for good reason: broad immunity is necessary for the Fund to pursue its purposes and avoid unilateral interference by the courts of any one of its 190 member states. *See* Art. IX, Section 1 (immunities necessary "[t]o enable the [IMF] to fulfill the functions with which it is entrusted"); *Jam*, 139 S. Ct. at 771. Unlike other international financial institutions, the Fund is unique in that its lending is exclusively non-commercial and exclusively to sovereigns. And the Fund's lending programs are tied to a larger regulatory enterprise. *EM Ltd. v. Republic of Argentina*, 473 F.3d 463,

6

482-84 & n. 21 (2d Cir. 2007) (noting that "[t]he IMF is a unique cooperative international institution" whose "larger regulatory enterprise [is] intended to preserve stability in the international monetary system and foster orderly economic growth," and that the Fund plays a "unique role" in "regulating the international monetary system by intervening in the economies of its members."). Given the Fund's unique function and its need to avoid unilateral control by any single member country, each of its member countries conferred absolute immunity on the Fund and agreed to make this immunity effective in their domestic legal systems. *See* Art. IX, Sections 3, 10.

To summarize, under *Jam* and *Nyambal*, the BWAA's broad immunity reduces the jurisdictional inquiry to a simple question: has the Fund expressly waived its immunity for this proceeding? If the Fund has not done so, it is immune and the judicial proceeding must be dismissed.

Numerous lower courts, following this analytical path, have dismissed actions against the Fund for lack of subject matter jurisdiction. *See, e.g., Leonard A. Sacks & Associates, P.C. v. Intl. Monetary Fund*, CV 20-2266 (TJK), 2021 WL 1166738, at *2–3 (D.D.C. Mar. 26, 2021), *appeal filed*, No. 21-7034 (D.C. Cir. Mar. 6, 2021) (noting that "the Supreme Court recently reaffirmed the broader scope of the IMF's immunity" and dismissing proceeding where the Fund had not expressly waived its immunity); *Polak v. Int'l Monetary Fund*, 657 F. Supp. 2d 116, 120 (D.D.C. 2009) (denying jurisdictional discovery and dismissing suit "for want of subject matter jurisdiction" because the IMF "ha[d] not expressly waived the immunity conferred by the Articles of Agreement"); *accord Kissi v. de Laroisiere*, No. 82-1267, at 2 (D.D.C. June 23, 1982) (J.H. Green, J.) (noting "the law could not be clearer as to [the IMF]'s immunity" and dismissing action); *Stoll*

7

*v. Liuksila*, No. PS 3346-097F (D.C. Super. Ct. Sept. 30, 2003) (IMF did not waive immunity for purposes of garnishment proceeding).

In this case, that straightforward question—has the Fund waived its immunity?—has a straightforward answer: "No." The Fund has not waived its immunity from this garnishment proceeding. And Plaintiffs, the parties responsible for establishing the Court's jurisdiction, *see Jam v. Int'l Fin. Corp.*, 442 F. Supp. 3d 162, 170 (D.D.C. 2020), make no allegation to the contrary. Because the Fund has not waived its absolute immunity from suit, the Court should dismiss this case against the Fund for lack of subject-matter jurisdiction.

### 3. Neither the TRIA nor the IOIA abrogates the Fund's immunity

In their motion for default and response to the Fund's praecipe, Plaintiffs suggest that the TRIA abrogates the Fund's absolute immunity from suit. But this position finds no support in the TRIA's text, history, or case authority.

The FSIA "grants foreign states . . . immunity from suit in the United States (called jurisdictional immunity) and grants their property immunity from attachment and execution in satisfaction of judgments against them. *See* 28 U.S.C. §§ 1604, 1609." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018). "But those grants of immunity are subject to exception." *Id.*; 28 U.S.C. § 1609 ("[T]he property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter"); 28 U.S.C. § 1610 (listing "Exceptions to the Immunity from Attachment or Execution").

One such FSIA exception is TRIA, which is codified as a note to § 1610. *See* § 201(a), 116 Stat. 2337, note following 28 U.S.C. § 1610.[4] TRIA authorizes persons who obtain judgments

---

[4] TRIA provides: "Notwithstanding any other provision of law, … in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of

8

against a terrorist party "under the FSIA's terrorism exception [28 U.S.C. § 1605A]" to attach "the 'blocked assets of [the] terrorist party (including blocked assets of any agency or instrumentality of that terrorist party)." *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1317–18 (2016) (quoting TRIA § 201(a)). Thus, TRIA "specifically allow[s] § 1605A judgment holders to attach and execute against property of a foreign state, '[n]otwithstanding any other provision of law,' including those provisions otherwise granting immunity, but only with respect to assets associated with certain regulated and prohibited financial transactions." *Rubin*, 138 S. Ct. at 824.

TRIA, therefore, is a statutory exception to the immunity otherwise enjoyed by *foreign states* under the FSIA. *Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir. 1984) ("[U]nder § 1609 *foreign states* are immune from execution upon judgments obtained against them, unless an exception set forth in §§ 1610 or 1611 of the FSIA applies."); *Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*, 280 F.Supp.2d 314, 319 (S.D.N.Y.2003) ("[T]o the extent that a *foreign country's* sovereign immunity potentially conflicts with Section 201(a), the 'notwithstanding' phrase removes the potential conflict."), aff'd, 346 F.3d 264 (2d Cir. 2003) (emphasis added); *Wyatt v. Syrian Arab Republic*, 83 F. Supp. 3d 192, 195 (D.D.C. 2015) (explaining that the TRIA provides an exception to FSIA execution immunity for blocked assets).

No case, as far as the Fund is aware, has ever applied TRIA's immunity waiver beyond the confines of the FSIA. That is not surprising given that TRIA is codified as an exception to FSIA immunity. The Fund's immunity, in contrast, derives from its Articles and is codified in the

---

terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." § 201(a), 116 Stat. 2337.

9

BWAA, *not* the FSIA.  *See* Part A(2), above. The Fund's immunity under the Articles and BWAA is not subject to a menu of statutory exceptions like the FSIA—as explained in *Jam* and *Nyambal*, the Fund's immunity may *only* be abrogated by its own express waiver. There is no such waiver here and waiver is not alleged.

Stated differently, the Fund is not invoking the immunity of the underlying sovereign (Afghanistan), whatever its scope under TRIA and the FSIA. Rather, the Fund is asserting its own, *independent* immunity under its Articles (a treaty of the United States) and a different statute (the BWAA).  That absolute immunity compels dismissal of the Fund from this action.

Plaintiffs suggest, however, that Congress, in enacting TRIA within the FSIA's statutory scheme, intended by implication to *also* create an exception to the Fund's otherwise absolute judicial immunity under the BWAA. Nothing in TRIA's text, history, or case authority supports their position. Further, such a result would fly in the face of settled principles of statutory construction. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) ("'[R]epeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.'") (alteration in original).

Repeal by implication would be particularly disfavored here: an implicit repeal of the BWAA would cause the U.S. to be in violation of the Articles of Agreement—a multilateral treaty to which the U.S. is a party. *See, e.g.*, *United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015) (noting that "'an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.'" (*quoting Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804))).

Further, "[w]hen confronted with two Acts of Congress allegedly touching on the same topic, this Court … must … strive 'to give effect to both.'" *Epic Systems Corp. v. Lewis*, 138 S.

Ct. 1612, 1624 (2018) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). Even if TRIA and the BWAA touched the same subject (they do not) they may live harmoniously side by side, operating in their own spheres: with TRIA regulating the scope of foreign sovereign immunity, and the BWAA enshrining the Fund's absolute immunity. The Court must give effect to both statutes, and reject Plaintiffs' invitation to dismantle the Fund's absolute immunity.

Finally, Plaintiffs suggest that TRIA overrides the Fund's immunity because the FSIA defines the scope of immunity conferred on international organizations by the IOIA. Dkt. No. 9, (citing *Jam*, 139 S. Ct. at 772). Plaintiffs misread *Jam*. *Jam* held that the FSIA "governs the immunity of international organizations" subject to the IOIA. 139 S. Ct. at 772. That is because the IOIA "grants international organizations the 'same immunity' from suit 'as is enjoyed by foreign governments' at any given time." *Id.* (quoting IOIA, 22 U.S.C. § 288a(b)).

The Supreme Court noted, however, that the "immunities accorded by the IOIA" are "only default rules," and an international "organization's charter can always specify a different level of immunity." *Id.* at 771. Specifically citing the Fund's Articles, the Supreme Court noted that the Fund's charter "do[es] just that." *Id.*; *accord Nyambal*, 772 F.3d at 281 (Fund's immunity "is broader than the protection afforded" to other international organizations by the IOIA).

Because the Fund's immunity does not depend on—and is broader than—the IOIA's "default rules," the FSIA has no bearing on the Fund's immunity. By extension, TRIA has no bearing on the Fund's immunity. Instead, the source of the Fund's immunity is the Fund's own Articles, which render it absolutely immune from this proceeding.

> **4. The Fund's immunity from suit renders Plaintiffs' efforts to serve it ineffective**

Because the Fund's immunity deprives this Court of subject-matter jurisdiction, the Court need not consider the remaining legal consequences of the Fund's immunity. But since Plaintiffs'

11

filings focus heavily on service, it is worth noting that the Fund's immunity from "judicial process" bars Plaintiffs from serving the Fund, and renders Plaintiffs' previous efforts to do so ineffective. *See Garcia v. Sebelius*, 919 F. Supp. 2d 43, 46 (D.D.C. 2013) (noting that, in a suit where an international organization was absolutely immune from "suit and every form of judicial process," the plaintiffs' attempts at service were ineffective).

In their response to the Fund's praecipe, Plaintiffs fault the Fund for "ignoring" the Writ. Plaintiffs argue that "if the IMF wished to challenge the method of service or claim immunity, the proper course would have been to challenge the service in district court, not simply ignore the service." (Response 2 n.1, Dkt. No. 9.) But this misconstrues the role that service and immunity play in litigation.

Absent service, "a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Bros.*, 526 U.S. at 350. It is Plaintiffs' burden to prove service in the first instance, *see* Fed. R. Civ. P. 4(l), and it is Plaintiffs' burden to establish they effectuated service when the propriety of service is challenged. *Raynor v. D.C.*, 296 F. Supp. 3d 66, 69 (D.D.C. 2017). Because Plaintiffs never served the Fund, the Fund never officially became a party to this case and had no obligation to take action in that capacity. Plaintiffs' argument that the Fund should have read the Writ[5] anyway and taken affirmative steps to *disprove* service turns the concept of service on its head.

---

[5] Plaintiffs seem to presume that the Fund read the Writ, noted its reference to the TRIA, and chose to ignore it. But, as Plaintiffs' affidavit of purported service concedes, the document never made it past the security company hired by the Fund to protect the Fund's headquarters.

The same goes for Plaintiffs' immunity argument. The Fund's immunity from suit is meant to protect it from both the consequences of litigation *and the attendant burdens of litigating*. *Nyambal*, 772 F.3d at 280–81. Consistent with that purpose, courts have held that they must consider immunity issues whether an immune party appears to raise them or not. *See, e.g.*, *Wyatt*, 83 F. Supp. 3d at 194.[6] And that makes sense: the Fund's immunity from "every form of judicial process" would be an empty promise if Plaintiffs could force the Fund into court simply by ignoring that immunity and trying, ineffectively, to serve it. *See Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 84 n.10 (2006) ("If ignoring judicial proceedings effectively conferred jurisdiction over foreign states and claims against them, the rule permitting collateral attacks on jurisdictional grounds would largely be a dead letter for those defendants.")

## B. **CONCLUSION**

Because the Fund enjoys absolute immunity from this garnishment proceeding, the Court should dismiss the case against the Fund for lack of subject matter jurisdiction, and grant such other and further relief as the Court deems just and appropriate.

---

[6] Of course, immune entities that do not appear to assert their immunities run the risk that a court will disagree with their position. That is why the Fund has appeared specially to assert its immunity here.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2021, the foregoing document was filed with the Clerk of the Court and served through the Court's ECF system, which provided automatic service upon the following:

>John Thornton, Esq.
>do Campo & Thornton, P.A.
>Chase Bank Building
>150 S.E. 2nd Avenue, Ste.602
>Miami, Florida 33131
>*Attorneys for Plaintiffs*

>*/s/ James R. Newland*
>James R. Newland

76895569v.1

14