IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JOHN DOES 1 THROUGH 7,

    *Plaintiffs,*

v.              Misc Action No. 1:21-MC-00110-DLF

THE TALIBAN, AL-QAEDA,
 and THE HAQQANI NETWORK,

    *Defendants.*

## MOTION TO STRIKE DE 8 AND DE 14

Plaintiffs, John Does 1 though 7, pursuant to Fed.R.Civ.P. 7 and 12(f), hereby move to strike DE 8 and 14 and state as follows:

**I.  Background**

Plaintiffs, John Does 1 though 7, were victims of a massive bomb attack by the Taliban, Al-Qaeda, and the Haqqani Network in Kabul, Afghanistan on January 4, 2016.  They brought suit against them, and on November 5, 2020, were awarded nearly 140 million dollars for their injuries.  *See* Final Default Judgment, *John Does 1 through 7 v. the Taliban, et al.,* No. 20-00605 (N.D. Texas Nov. 5, 2020), Dkt. No. 22).  On August 20, 2021, they registered their judgment in this district.  DE 1.

The International Monetary Fund ("IMF") holds assets payable to Da Afghanistan Bank, which is now controlled by and is thus an agency or instrumentality of the Taliban and the Haqqani Network.  According to news reports, on or about August 19, 2021, the IMF froze the assets.  On September 23, 2021, Plaintiffs served the IMF with a Writ of Attachment on Judgment other than Wages, Salary and Commissions (the "Writ") requiring the IMF "to hold and not to pay or surrender" the assets it held of the defendants "or the agency or instrumentality

of the Defendant as defined by Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28

U.S.C. § 1610 note, including but not limited to Da Afghanistan Bank." *See* Writ attached

hereto as Exhibit A and DE 4, Affidavit of Process Server.  The Writ further contained the

standard "INTEROGATORIES IN ATTACHMENT".  *Id*.  The Writ announced that the

attachment was made pursuant to the Terrorism Risk Insurance Act, 28 U.S.C.S. § 1610 note

("TRIA"), and further announced that "[i]f you fail to answer the Interrogatories, judgment may

be entered against you for the entire amount of the plaintiff's claim and costs [Title 16, Section

526(b).  D.C. Code 1981 ed.]."  Pursuant to DC code § 16-521, the Writ instructed the IMF that

it was "required by law to file answers to the [ ] interrogatories within ten (10) days after service

of the writ...".

The IMF chose not to answer the Interrogatories in Attachment within the proscribed

time period, and made no other timely filing.

On October 12, 2021, Plaintiffs filed a motion for judgment ("Motion for Judgment")

seeking to impose judgment on the garnishee, the IMF, for failing to respond to the Writ.  DE 6.

On October 15, 2021, the IMF filed DE 8, a document oddly titled, "Praecipe".  It

"advised" the Court of purported immunity, and attached a letter to undersigned counsel in

which it argued it was immune, and requested undersigned to withdraw the Writ and Motion for

Judgment.  DE 8-1.  Plaintiffs filed a response on October 19, 2021.

On November 1, 2021, after this Court had already ordered the International Bank for

Reconstruction and Development ("IBRD") (which had similarly defaulted, but had at least

served *some* paper to the Court within the prescribed time period) to respond to the Motion for

Judgment, the IMF did not file a response to the Motion for Judgment, but rather filed a

document titled "Motion to Dismiss". DE 14.

## II.     Argument

DE 8 and 14 should be stricken, and judgment entered against the IMF.  At a minimum, the IMF should be ordered to respond to the Motion for Judgment, as this Court has ordered the IBRD.

Insofar as DE 8, the "Praecipe" purports to be a motion, it should be stricken pursuant to Fed.R.Civ.P. 7(b)(1)(b) and (c), as it does not seek an order or state the relief sought of the Court.  It merely advises the Court of its purported immunity.  The attached letter it contains merely asks the undersigned to withdraw the Writ.

It clearly does not answer the Writ, and so cannot remain as an answer.

It is not styled as and does not request that service of the Writ be quashed.[1]  It is also untimely as a response to the Writ.  And, it offers no excuse for failing to timely respond to the Writ or move to quash it.

It is not a response to the Motion for Judgment.

Insofar as the filing purports to be a defense to the Writ or the Motion for Judgment, DE 8 is legally insufficient (as will be shown herein) and therefore should also be stricken pursuant to Fed.R.Civ.P. 12(f).

DE 8 appears to be some sort of late-filed placeholder for the even later filing of the document titled Motion to Dismiss (DE 14).  DE 14, likewise, should be stricken.  Titled a "Motion to Dismiss", it is not properly addressed to any pleading.  And, it is not an answer and

---

[1]If the IMF wished to challenge the method of service or claim immunity, the proper course would have been to file a motion to quash.  *See Novak v. World Bank*, 227 U.S. App. D.C. 83, 703 F.2d 1305, 1310 (1983) (reversing district court's dismissal of claim against World Bank, and stating "the World Bank, if it claimed service was improper, should have contested the validity of service and asserted that it was not amenable to suit in the district court, as, indeed, it asserted in appellant's prior actions.").

does not address the Motion for Judgment.  It does not address why the IMF simply did not

respond to the Writ or file a Motion to Quash, and it cannot serve to avoid the filing of a

response to pending the Motion for Judgment (DE 6), in which the Plaintiffs are the movants.

And, like DE 8, the defenses it raises are legally insufficient, as shown below.

### A.   The Bases of IMF's immunity are United States Statutes; TRIA overrides all prior statutory exceptions to immunity.

The IMF benefits from two sources of immunity.  Both, however, are dependent upon

and grounded in United States statute.

First, the International Organization's Immunities Act ("IOIA"), §§ 288-288i,  provides

for a baseline of immunity for the IMF based upon its designation as a public international

organization by Executive Order 9751, dated July 1, 1946.

Second, international organizations such as the IMF can, through their articles, enjoy

immunities beyond those provided by the IOIA.  (The IMF is correct on this point.)

Remarkably, however, the IMF fundamentally misstates its own history and the legal

underpinnings of the immunity contained in its Articles.

The very first representation it made to this Court in the first sentence of the Praecipe

(DE 8), and the crux of its argument in the Motion to Dismiss (DE 14), is false:  "The

International Monetary Fund's Articles of Agreement[1] are a treaty executed by the United States.

*See* 60 Stat. 1401; 2 UNTS 39."  DE 8 at 1.  "The Articles are a treaty executed by the United

States, 60 Stat. 1401; 2 UNTS 39."  DE 14-1 at p. 2.  These statements are false.  The Bretton

Woods Agreement is not a treaty.  It was not made by the Executive and concurred to by two

thirds of the Senate, as provided in Article II, Clause 2 of the Constitution.  Even the cite

provided as authority for the statement by the IMF leaves no doubt as to the status of the Bretton

Woods Agreement.  It is titled: "INTERNATIONAL AGREEMENTS *OTHER THAN TREATIES*".  60 Stat. 1401; 2 UNTS 39 (emphasis added).[2]

Rather, the Bretton Woods Agreement is merely an international agreement.  It became the law of the land based solely on its passage into law and codification in the Unites States Code, specifically through the Bretton Woods Agreement Act, 22 U.S.C. § 286h.  Had Congress not passed the Bretton Woods Agreement Act, the Articles would have not carry the force of law in the United States.

The IMF's entire argument, which is based on the belief that its Articles carry the force of law superior to a U.S. Statute, is thus baseless.[3]  The immunity is a statutory immunity that was granted by Congress, and which, therefore, can be overridden by a statute passed by Congress.

The Terrorism Risk Insurance Act overrides any prior-enacted contrary provision of law, including immunities, that would prevent the execution against the assets of a terrorist judgment debtor, or the assets of a central bank agency or instrumentality of that judgment

---

[2] Even if it were a treaty whether a Treaty is self-executing is determined by looking to its language.  By its own language, it required adoption by statute within member states to become law in those states.  It provides:

> Section 10.  Application of Article
> Each member shall take such action as is necessary in its own territories for the purpose of making effective in terms of its own law the principles set forth in this Article and shall inform the Fund of the detailed action which it has taken.

Art. IX, Section 10.  Thus, it is clear that a statute was necessary to make the agreement effective.  The question of whether an act of Congress could override immunities contained in a Treaty thus need not be reached, as the Bretton Woods Agreement is not a Treaty.

[3] Since a foreign state or its central bank cannot invoke sovereign immunity to shield against TRIA execution, it follows that an international organization cannot derivatively invoke those same immunities.

debtor.  *See Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006) ("TRIA, which was enacted later in time than [28 U.S.C.] § 1611, overrides the immunity conferred in § 1611").   It provides for execution or attachment "notwithstanding *any* other provision of law".  TRIA, Section 201(a), emphasis added.  Indeed, the intent of the "notwithstanding" language in TRIA is "to target statutory exceptions to immunity,"  *Id. at* 498 quoting *United States v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771, 787 (5th Cir. 2006).  The Terrorism Risk Insurance Act leaves no doubt that Congress intended to, and did, override all prior grants of immunity so that collection can be had against those holding assets of terrorist judgment debtors when it authorized those collections "notwithstanding any other provision of law".[4]

TRIA was passed on November 26, 2002.  The IOIA was passed on December 29, 1945, and the IMF was designated as a public international organization entitled to enjoy the IOIA's immunities on July 1, 1946.  The immunities provided for in the IMF's Articles of Agreement, Article IX, Section 3, were codified on July 31, 1945.  22 U.S.C. § 286h.  Thus, both of the statutory sources of immunity enjoyed by IMF predate TRIA, and so were clearly overridden by it for that narrow band of cases concerning collection of judgments against terrorist states and other terrorist parties, for which TRIA provided an exception to immunity.

**B.  The IMF's Purported Avoidances of TRIA Lack All Substance.**

**1.  That TRIA Only Applies to Immunities Contained in the FSIA**.

The IMF would have the Court believe that TRIA only overrides the immunities of foreign states contained within the Foreign Sovereign Immunities Act, *i.e.*, that TRIA only provides an exception to FSIA immunity.  But TRIA explicitly applies to more than foreign

---

[4] Again, the question of whether Congress is empowered to override treaty is not implicated here, as the Articles are simply another provision of law created by Congress.

states – it applies "*in every case* in which a person has obtained a judgment *against a terrorist party* on a claim based upon an act of terrorism". 28 U.S.C. 1610, note (emphasis added). It does not state that collection can be had, "notwithstanding any other provision in this Section" or "notwithstanding any other provision in the FSIA". It reads, "notwithstanding *any other provision of law . . .* ". *Id.* (emphasis added). Had Congress intended to limit the override of immunities to those codified in the FSIA, or to limit the exceptions only to foreign states, it would have so stated. It would have been simple to do so. That it did not compels the conclusion that TRIA overrides the immunities both generally enjoyed by the IMF and other International Organizations pursuant to the IOIA, and those the IMF enjoys pursuant to its Articles, which have the force of law pursuant to their codification at 22 U.S.C. § 286h. This simple conclusion is wholly consistent with the entire rationale of TRIA – to allow the victims of terrorism to collect against the blocked assets of terrorists, and to overcome the impediments they faced.

**2. That the IMF is not aware of any prior TRIA collections against international organizations.**

The IMF next argues that it is not aware of any application of TRIA to an international organization, as opposed to a foreign state. That is not surprising. It is indeed rare that the IMF or any international organization would hold blocked funds of an agency or instrumentality of a terrorist judgment debtor. A series of exceptional circumstances had to occur before an international organization came into the crosshairs of a TRIA collection. Plaintiffs first had to get a judgment against the Taliban, Al-Qaeda, and the Haqqani Network – bringing into existence a terrorist judgment debtor; then, after a 20-year war, the Taliban and Haqqani Network fighters, these judgment debtors, had to take over Afghanistan and Da Afghanistan Bank, the Central Bank of Afghanistan, installing a new chief and thereby making it their agency

or instrumentality; and then the IMF had to freeze the funds that were due to be paid to Da

Afghanistan Bank to prevent them from reaching the Taliban and the Haqqani Network.

Through this remarkable set of events, the IMF came to be holding the blocked assets of an

agency or instrumentality of terrorist judgment debtors.  A rare exception to the statutory

immunity the IMF normally enjoys thus presented itself.  The law is clear in this situation – the

immunity is overcome.  The fact that it never happened before is meaningless.  Arguing that a

TRIA collection has never been made against an international organization is the logical

equivalent of arguing that someone from Peoria has never been charged with treason.  It does not

mean that one couldn't.

   **3.  That the IMF's functioning would suffer.**

   The skies will not fall if the IMF has to relinquish money to the victims of the Taliban,

the Haqqani Network and al Qaeda, rather than hold it or release it to the Taliban or the Haqqani

Network.  To the contrary.

   And, it is worth noting that Congress, in enacting TRIA, did not open up the IMF to

liability on its own right.  Rather, through this and any TRIA collection, the IMF would only

have to surrender assets that belong to an agency or instrumentality of a terrorist judgment

debtor.  Only the assets that would flow to the Taliban and the Haqqani Network, through the

Afghan central bank they now control, are at issue.  (Of course, should the IMF be held liable for

flouting the law and this Court's authority, such liability is a necessary condition for the

operation of the rule of law.  Even immunities depend on the operation of the rule of law.  The

power to enforce the law through statutory sanctions is implied.  The sovereignty of the United

States and the rule of law depends on the proper paying of respect, even by those who have

immunities, to the Courts.)

**4. That the Plaintiffs request repeal by implication.**

Finally, the IMF argues that to accept Plaintiffs' interpretation is to adopt a disfavored repeal by implication. There was, of course, nothing implied in the language of TRIA. It is explicit. Its specific application in "every" case of a judgment against a "terrorist party", along with the "notwithstanding any other provision of law" clause, leave no doubt that the explicit intention of Congress was to override any prior immunities.

**III.    Conclusion**

The IMF's filings at DE 8 and 14 are untimely, procedurally defective, and legally insufficient. They should be stricken. The IMF chose not to respond to the Writ, and so judgment should be entered against it. At a minimum, it should be ordered to respond to the Motion for Judgment (DE 6).

Undersigned counsel conferred with opposing counsel concerning this motion in compliance with LCvR 7(m). IMF indicated that it opposes the motion.

**Wherefore**, Plaintiffs/Judgment Creditors respectfully request that this Court enter an order striking DE 8 and DE 14 from the docket, entering judgment for Plaintiffs, or for what other relief the Court deems just and proper.

Dated:  November 8, 2021.

Respectfully submitted,

**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601

By:      s/ *John Thornton*
         John Thornton

DC Bar No. 980680
jt@dandtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 8, 2021, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  No service is required on Defendants the

Taliban, Al-Qaeda, and the Haqqani Network, which are in default for failing to appear. *See* Fed.

R. Civ. P. 5(a)(2).

<u>s/ *John Thornton*</u>
John Thornton