**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| John Does 1 through 7, | |
| Plaintiffs, | |
| vs. | Misc Action No. 1:21-mc-00110-DLF |
| The Taliban, Al-Qaeda, and the Haqqani Network | |
| Defendants. | |

## INTERNATIONAL BANK FOR RECONSTRUCTION AND DEVELOPMENT'S MOTION TO QUASH WRIT OF ATTACHMENT

Pursuant to this court's November 10, 2021 Order, the International Bank for Reconstruction and Development ("IBRD" or "Bank") submits this Motion to Quash Plaintiffs' Writ of Attachment.

The Court lacks jurisdiction over the Bank in this matter, and, as a result, the Court should quash Plaintiffs' writ of attachment. Specifically, the Bank and its assets enjoy immunity from actions like the one brought here. That immunity flows from the Bank's Articles of Agreement, federal statutes, and Executive Orders and has been recognized by this Court and the D.C. Circuit. Plaintiffs seek to attach assets based on an exception to foreign sovereign immunity in the Terrorism Risk Insurance Act ("TRIA"), which allows for attachment of blocked assets of terrorists to satisfy a judgment, but that exception expressly does not apply to the Bank and entities like it. Even if it did apply, Plaintiffs have failed to meet their burden under TRIA by, among other things, showing that the assets they seek to attach are "blocked assets" and that they belong to the terrorist groups from which Plaintiffs

have secured the underlying judgment. Finally, jurisdiction is also lacking because even if the Bank were not immune from service of process, Plaintiffs' failed to properly serve the Bank via United States Marshal, as is required for writs of attachment under both federal and local laws.

## STATEMENT OF FACTS

### I.      Background

The IBRD is an international organization and multilateral development bank that was created in 1944 under its Articles of Agreement by representatives of 44 countries, including the United States. *See* Articles of Agreement of the International Bank for Reconstruction and Development, Dec. 27, 1945, 60 Stat. 1440, *as amended*, 16 U.S.T. 1942 ("Articles"). Currently, a total of 189 countries (nearly all the countries in the world) are members of the IBRD. Consistent with its Articles, the IBRD aims to reduce poverty by providing low-interest loans and grants to sovereign governments for investment in education, health, public administration, energy, infrastructure, financial and private sector development, agriculture, and environmental and natural resource management. The IBRD, along with the International Development Association, are commonly referred to as the "World Bank."

The United States accepted the Articles and became a member of the IBRD pursuant to the Bretton Woods Agreements Act of 1945, 22 U.S.C. § 286 *et seq*. The IBRD was subsequently designated an "international organization" by Executive Order, *see* Exec. Order No. 9751, 11 Fed. Reg. 7713, 7713 (July 11, 1946), entitling it to the immunities and privileges provided by the International Organizations Immunities Act of 1945 ("IOIA"), 22 U.S.C. § 288a(b). *See Mendaro v. World Bank*, 717 F.2d 610, 613 n.26 (D.C. Cir. 1983). According to the Executive Order, that designation within the meaning of the IOIA "is not intended to abridge in any respect privileges

and immunities" the IBRD "acquired or may acquire by treaty or Congressional action" provided that it shall not be construed to affect the judicial process provision of the Bank's Articles. *See* Exec. Order No. 9751, 11 Fed. Reg. 7713, 7713 (July 11, 1946).

As an international organization with its own international personality, the IBRD is independent of any individual member country. In order to protect the Bank from interference by any member—or that member's courts—its Articles provide, *inter alia*, that the Bank is immune from suit except in the limited circumstances in which it expressly waives its immunity in order to encourage public and private investment as contemplated under the Articles. *See Mendaro*, 717 F.2d at 618.

Additionally, the Bank's Articles provide for the immunity of its assets "from all forms of seizure, attachment or execution before the delivery of final judgment against the Bank," *see* Articles, art. VII, § 3, and "[p]roperty and assets of the Bank, wherever located and by whomsoever held, shall be immune from search, requisition, confiscation, expropriation or any other form of seizure by executive or legislative action." *Id.,* § 4. The Bank's immunities and privileges are "[t]o enable the Bank to fulfill the functions with which it is entrusted." *Id*., § 1. The IBRD's immunities and privileges under its Articles have been incorporated into the United States Code. *See* 22 U.S.C. § 286h. Indeed, the Bretton Woods Agreements Act provides that the immunities and privileges articulated in the IBRD's Articles "shall have full force and effect in the United States." *Id.*

## II.     Plaintiffs' Writ of Attachment

Plaintiffs, John Does 1 – 7, sued the Taliban, Al-Qaeda, and the Haqqani Network in the United States District Court for the Northern District of Texas and secured a default judgment totaling $138,418,741. *See* Final Default J., Dkt. No. 1-1. On September 17, 2021, this Court issued a Writ of Attachment on Judgment Other Than Wages, Salary and Commissions ("Writ") against

the IBRD and the International Monetary Fund (the "Fund"), and required the international organizations to respond to interrogatories within ten days of service. Plaintiffs attempted to serve the Writ upon IBRD on September 23, 2021, and filed an Affidavit of Process Server attesting to "service" upon a security guard at the Bank's address. *See* Affidavit of Process Server, Dkt. No. 5. On September 27, 2021, the Bank corresponded with Plaintiffs' counsel by letter and apprised him of the Bank's privileges and immunities under its Articles and the IOIA.[1]

On October 12, 2021, Plaintiffs moved for an entry of default judgment against the Fund and the IBRD for the value of the underlying judgment. *See* Dkt. No. 6. On October 29, 2021, the Court set the deadline for the Bank's response as November 5, 2021. The Court thereafter granted IBRD's motion for extension of time to respond by November 15, 2021.

## LEGAL STANDARD

"Federal courts are tribunals of 'limited jurisdiction,' possessing 'only that power authorized by Constitution and statute[.]" *Zuza v. Office of the High Representative*, 857 F.3d 935, 938 (D.C. Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A court may not proceed to the merits of a case "without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). However, a "federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Id.*; *see also Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 125 (D.D.C. 2020).

Courts do not have subject-matter jurisdiction where a party is immune from suit. *See In re Kaiser Group Int'l, Inc.*, 730 F. Supp. 2d 247, 251 (D.D.C. 2010) *aff'd*, 420 F. App'x (D.C. Cir.

---

[1] The Bank's letter was mailed to the Court, docketed, and subsequently struck from the docket pursuant to Court's Order. *See* October 29, 2021 Minute Order.

2011). "A court has an 'affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority,'" *Hudes v. Aetna Life Ins. Co*., 806 F. Supp. 2d 180, 186 (D.D.C. 2011) (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)), *aff'd*, 493 F. App'x 107 (D.C. Cir. 2012), and a court cannot enter a judgment over a party it does not have jurisdiction over, *see Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1180 (D.C. Cir. 2013) ("When a federal court reaches beyond its statutory grant of subject-matter jurisdiction, its judgment is void." (citation omitted)). The "[p]laintiff bears the burden of proving that the Court has subject matter jurisdiction." *Hudes*, 806 F. Supp. 2d at 186. Moreover, the "[c]ourt need not accept unsupported inferences or legal conclusions cast as factual allegations," *Tabman v. FBI*, 718 F. Supp. 2d 98, 100 (D.D.C. 2010), and "[b]ecause subject matter jurisdiction focuses on the court's power to hear the claim, [] the court must give the plaintiff's factual allegations closer scrutiny" when determining whether it has subject-matter jurisdiction to hear a claim. *See Delaney v. District of Columbia, et al.*, 612 F. Supp. 2d 38,  42 (D.C.C. 2009); *see also Hudes*, 806 F. Supp. 2d at 4.Federal Rule of Civil Procedure 12(b)(5) governs motions to dismiss for insufficient service of process. The plaintiff bears the burden of proving effective service. *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007) (*citing Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002)). Failure to effect service is grounds for dismissal. *See id.* at 164 (citing Fed. R. Civ. P. 4(m)).

## ARGUMENT

I.   **The Court Should Quash the Writ Because the Bank and its Assets are Immune from Every Form of Judicial Process**

Under the Bank's Articles and the IOIA, the Bank and its assets are immune "from suit and every form of judicial process" unless: (1) the suit fits within a limited exception to immunity; or (2) the Bank has expressly waived its immunity. *See Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 280-81 (D.C. Cir. 2014) (international organizations enjoy "dual protections" of treaty-based immunity and IOIA immunity). Immunity is more than "just a defense to liability on the merits" — it also relieves the holder of immunity from the "attendant burdens of litigation." *See Foremost-McKesson, Inc., et al., v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990) (citation omitted). This immunity includes every form of judicial process, including service of process. *See Garcia v. Sebelius*, 919 F. Supp. 2d 43, 46 (D.D.C. 2013).

Because the Bank is immune, the Court had no jurisdiction to issue the Writ, and quashing the Writ is warranted here.[2] *See Swarna v. Al–Awadi*, 622 F.3d 123, 141 (2d Cir. 2010) ("[T]he question of whether the . . . defendants are protected by . . . immunity must be answered before the entry of a default judgment" because "if the . . . defendants were indeed protected by . . . immunity, the District Court would have lacked jurisdiction to enter a default, much less a default judgment." (emphasis added)) (collecting cases); *Nyambal*, 772 F.3d at 280–81; *Zhan v. World*

---

[2] Local statutes regarding seizure of property, such as D.C. Code § 16-526(b), are not applicable in federal court to the extent that provisions of the United States Code are to the contrary. *See* Fed. R. Civ. P. 64 (making state seizure laws applicable, "[b]ut a federal statute governs to the extent it applies"); Fed. R. Civ. P. 69(a)(1) (making state execution procedures applicable except that "a federal statute governs to the extent it applies"). As explained above, federal law confers immunity on the World Bank from garnishment proceedings, and it therefore supersedes D.C. Code § 16-526(b). Furthermore, the plain terms of D.C. Code § 16-526(b) indicate that a court need not enter judgment against the World Bank if the Bank can show cause for its failure to answer the interrogatories. The same immunity conferred on the World Bank by federal law constitutes good cause for declining to answer interrogatories.

*Bank*, No. 19-1973 (DLF), 2019 WL 6173529 (D.D.C. Nov. 20, 2019), *aff'd.*, 828 F. App'x 723 (D.C. Cir. 2020); *Smith v. World Bank Grp.*, 99 F. Supp. 3d 166, 171 (D.D.C. 2015) (dismissing employment discrimination suit brought against the World Bank because "[the World Bank's] immunity renders this Court without jurisdiction"), *aff'd*, 694 F. App'x 1 (D.C. Cir. 2017) (Mem.); *Hudes*, 806 F. Supp. 2d at 187 (dismissing wrongful termination claim brought against the World Bank for lack of subject matter jurisdiction "because the World Bank is immune from such suits."). Furthermore, because the Bank is immune from service of process, the Writ could not be served on the Bank, and the Court has no jurisdiction over the Bank. *See Sebelius*, 919 F. Supp. 2d at 46*; Soltan v. El Beblawi*, No. 20-1437 (CKK), 2021 WL 4243409, at *11 (D.D.C. Sept. 17, 2021) (granting motion to quash service where defendant was immune).

  *First*, the IOIA requires that any waiver of organizational immunity be express. *See* 22 U.S.C. § 288a(b). IBRD has not expressly waived its immunity here, and Plaintiffs do not argue otherwise. *Second*, the IOIA grants international organizations the "same" immunity as foreign sovereigns, and the Supreme Court recently held that the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1605, "governs the immunity of international organizations" under the IOIA. *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 772 (2019). The contours of immunity that foreign governments enjoy, and its exceptions, are codified in the FSIA. *See* 28 U.S.C. § 1601, *et. seq.* Specifically, the FSIA provides that the "[p]roperty in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter."[3] 28 U.S.C. § 1609; *see also* 28 U.S.C. § 1610 (listing "Exceptions to the Immunity from Attachment or Execution"); *Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir. 1984)

---

[3] The Bank does not concede these sections of the FSIA apply to the Bank, but in any event, the Court need not decide the issue because even if they did, Plaintiff has failed to state a claim under TRIA.

("[U]nder § 1609 foreign states are immune from execution upon judgments obtained against them, unless an exception set forth in §§ 1610 or 1611 of the FSIA applies.").

Plaintiffs invoke TRIA, Pub. L. No. 107-297, 116 Stat. 2322 (2002)—a statute that governs post-judgment attachment proceedings in certain cases arising out of terrorist acts—and point to § 201(a) of TRIA, which has been codified as an exception to the immunity otherwise enjoyed by foreign states under the FSIA. *See Wyatt v. Syrian Arab Republic*, 83 F. Supp. 3d 192, 195 (D.D.C. 2015) (explaining that TRIA provides an exception to FSIA execution immunity for blocked assets); *Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*, 280 F. Supp. 2d 314, 319 (S.D.N.Y. 2003) ("[T]o the extent that a foreign country's sovereign immunity potentially conflicts with Section 201(a), the 'notwithstanding' phrase removes the potential conflict."), *aff'd*, 346 F.3d 264 (2d Cir. 2003).

However, the TRIA exception to immunity applies only to *foreign sovereigns* and not, by its own terms, to international organizations. *See* TRIA § 201(a), 116 Stat. 2337, note following 28 U.S.C. § 1610. The FSIA expressly protects the property of international organizations from attachment, *see* 28 U.S.C. § 1611(a), highlighting congressional intent to preserve international organizations' immunity in this context. Section 1611(a) specifically provides that "[*n*]*otwithstanding the provisions of section 1610* of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act *shall not be subject to attachment or any other judicial process* impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States." 28 U.S.C. § 1611(a) (emphasis added). The plain reading of § 1611(a) is the preservation of international organizations' immunity supersedes the exceptions to immunity in §  1610,

including TRIA. When the Congress codified § 201(a) of TRIA in § 1610—and not in any other sections of the FSIA—it was aware that the immunity of international organizations was set apart in both the IOIA and § 1611 of the FSIA and thereby would remain intact.

## II. Plaintiffs Have Failed To Prove a TRIA Claim against the Bank

Even *assuming* that § 201(a) of TRIA could abrogate the Bank's immunity, which it cannot, TRIA does not apply here. As an initial matter, the activities of the World Bank are regulated by its Articles of Agreement, which restrict its lending activities to its members, sovereign states, and, when guaranteed by a sovereign member, to "any political sub-division thereof and any business, industrial, and agricultural enterprise in the territories of a member." *See* Articles, art. III, § 4. The terrorist party at issue, the Taliban, has never been the recipient of a World Bank loan or grant or any other financial resources and, in fact, was in a state of armed conflict with the Government of Afghanistan during the period of the Bank's lending operations. *See The World Bank in Afghanistan*, The World Bank (last updated Oct. 8, 2021), https://www.worldbank.org/en/country/afghanistan/overview#1 ("The World Bank has paused disbursements in our operations in Afghanistan . . . ."); *see also* Rappeport, Alan, *The World Bank is freezing aid disbursements to Afghanistan*, The New York Times (Aug. 24, 2021), https://www.nytimes.com/2021/08/24/world/asia/world-bank-afghanistan.html (reporting that "[t]he World Bank . . . halted disbursements of aid money to Afghanistan" on Aug. 24, 2021. Also describing how "[t]he World Bank has committed more than $5.3 billion for development projects in Afghanistan since 2002 and has raised nearly $13 billion for the Afghanistan Reconstruction Trust Fund, which it administers.").

Plaintiffs' Writ instead appears to rely on the Taliban's assertion of authority as the legitimate government of Afghanistan and, as a result, its asserted status as beneficiary of

government and central bank assets. *See* Writ of Attachment (defining assets of defendants as including any "agency or instrumentality of the Defendant . . . including but not limited to Da Afghanistan Bank."). Under its Articles, the World Bank's authority is limited to the disbursement of resources to its members for development projects, and it does not have legal authority to hold assets of its members, or any instrumentality thereof, including the central bank of Afghanistan, Da Afghanistan Bank ("DAB").[4]

Further, even if the Bank did own assets of DAB or the government of Afghanistan, as a matter of law TRIA could not apply. TRIA allows attachment to satisfy a judgment only when, among others, the following conditions are met:

1. the assets belong to the terrorist party; and
2. the assets are "blocked assets" within the meaning of TRIA.

TRIA § 201(a).[5] No assets of the government of Afghanistan or of DAB could satisfy these conditions.

For the "blocked assets" condition of TRIA to be met with respect to any government of Afghanistan or DAB assets, the government of the United States would have to recognize the Taliban to have ownership of, or an ownership interest in, those assets:  Taliban ownership of, or

---

[4] TRIA states that only "the blocked assets *of* that terrorist party . . . shall be subject to" attachment. TRIA § 201(a) (emphases added). The Supreme Court has clarified that the "use of the word 'of' denotes ownership." *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (quotations omitted); *see also, e.g.*, *Zarmach Oil Servs., Inc. v. U.S. Dep't. of Treasury*, 750 F. Supp. 2d 150, 156 n.5 (D.D.C. 2010) ("TRIA authorizes the attachment of certain blocked assets in which a terrorist party has an actual ownership interest.").

[5] The full relevant text of the statute is as follows: "Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7) (2000)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a).

a Taliban ownership interest in, the property is thus a necessary condition of the government's

blocking authority.[6]  It is a matter of public record that the United States has not done so.  *See*

*Press Gaggle by Press Secretary Jen Psaki* (Sept. 7, 2021), https://www.whitehouse.gov/briefing-

room/press-briefings/2021/09/07/press-gaggle-by-press-secretary-jen-psaki-en-route-queens-

new-york/ ("[A]s the President said…there is no rush to recognition [of the Taliban].");

*Recognizing the Taliban 'a long way off,' Biden says*, NBC News (Sept. 7, 2021),

https://www.nbcnews.com/video/recognizing-the-taliban-a-long-way-off-biden-says-

120302149980 (Reporter: "Will you recognize the Taliban?"; President Biden: "No, that's a long

way off."). Absent recognition that the assets of the government of Afghanistan or DAB are owned

by the Taliban, which can only follow from recognition by the United States of the Taliban as the

legitimate government of Afghanistan, there is no legal authority under IEEPA to render any assets

of the government of Afghanistan or the DAB "blocked assets" under TRIA.

Moreover, the World Bank draws the Court's attention to the recently issued license by the

United States Treasury's Office of Foreign Assets Control, General License No. 14, of September

24, 2021. *See* U.S. Department of Treasury, Office of Foreign Assets Control, General License

No. 14, *Authorizing Humanitarian Activities in Afghanistan* (Sept. 24, 2021),

https://home.treasury.gov/system/files/126/ct_gl14.pdf.   General   License   14   specifically

authorizes the United Nations and its Specialized Agencies, which includes the World Bank,[7] to

---

[6] To be blocked property under TRIA, given the inapplicability of the Trading with the Enemy
Act, assets must be blocked pursuant to §§ 202 and 203 of the International Emergency Economic
Powers Act (50 U.S.C. 1701; 1702).  E.O. 13224 applies to "all property and interests in property
*of*" persons listed on the Specially Designated Nationals (SDN) list.

[7] *See* U.S. Department of Treasury, Office of Foreign Assets Control, Sanctions Programs and
Information, *Frequently Asked Questions No. 928*, Released on September 24, 2021 (available at
https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/2396) ("Persons authorized
under [General License No.] 14 include the following entities and their employees, grantees,
contractors, or other persons acting on their behalf:  (1) the United States Government; (2) NGOs;

engage in "all transactions involving the Taliban . . . that are ordinarily incident and necessary to the provision of humanitarian assistance to Afghanistan or other activities that support basic human needs in Afghanistan." *Id.* at 1. General License 14 removes any World Bank humanitarian operations from the application of IEEPA anti-terrorism sanctions applicable to the Taliban, rendering it legally impossible that any assets used in World Bank humanitarian operations could be "blocked assets" for the purpose of TRIA. *See id.*

Because Plaintiffs have failed to plead a TRIA claim against the Bank, the Bank is immune from this action—the Court lacks jurisdiction over the Bank, and the Writ must be quashed.

### III.   Plaintiffs Have Failed To Properly Serve The Bank

As discussed above, the Bank is immune from all forms of judicial process, including service of process, *see Sebelius*, 919 F. Supp. 2d at 46; however, even if the Bank were not immune from service, Plaintiffs have failed to properly serve the Bank pursuant to local and federal law. Service of a writ of attachment is governed by D.C. Code § 16-502,[8] which requires a "*marshal* to serve a notice on the defendant, if he is found in the District." (emphasis added).[9] Plaintiff did not serve the Bank via marshal, but allegedly via a process server. *See* Dkt. No. 5. Because Plaintiffs failed to lawfully serve the Bank, the Bank had no obligation to take action in this case. *See, e.g.*, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Accordingly, one

---

(3) the United Nations, including its Programmes, Funds, and Other Entities and Bodies, as well as its specialized Agencies and Related Organizations, *which includes the World Bank*.") (emphasis added)).

[8] *See* D.C. Code § 16-501 ("This section applies to any civil action in the United States District Court of the District of Columbia or the Superior Court of the District of Columbia…"). Plaintiffs invoked DC Code § 16-501, et. seq. in their Motion. *See* Mot. at 3.

[9] The federal rules similarly provide that "Process—other than a summons under Rule 4 or a subpoena under Rule 45—*must* be served by a United States marshal or deputy marshal or by a person specially appointed for that purpose." Fed. R. Civ. P. 4.1(a) (emphasis added).

becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.").

Dated: November 15, 2021                    Respectfully Submitted,

                                            By:  /s/ Jeffrey T. Green

                                            Jeffrey T. Green (D.C. Bar #426747)
                                            SIDLEY AUSTIN LLP
                                            1501 K Street, N.W.
                                            Washington, D.C. 20005
                                            (202) 736-8000
                                            jgreen@sidley.com

                                            *Counsel for International Bank for
                                            Reconstruction and Development*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th Day of November, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> John Andres Thornton
> DO CAMPO & THORNTON, PA
> 150 S.E. 2nd Avenue
> Suite 602
> Miami, FL 33131
> (305) 358-6600
> Fax: (305) 358-6601
> Email: jt@dandtlaw.com
> *Attorney for Plaintiffs John Does 1-7*

Respectfully submitted,

By: /s/ Jeffrey T. Green

Jeffrey T. Green (DC Bar #426747)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
jgreen@sidley.com

*Counsel for International Bank for Reconstruction and Development*