UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOES 1 THROUGH 7,

    *Plaintiffs*,

v.

THE TALIBAN, AL-QAEDA, and THE HAQQANI NETWORK,

    *Defendants*.

No. 21-mc-00110 (DLF)

**MEMORANDUM OPINION**

    John Does 1 through 7 bring this miscellaneous action against the International Monetary Fund (the Fund) and the International Bank for Reconstruction and Development (the World Bank). The plaintiffs previously obtained a judgment in a district court against the Taliban, Al-Qaeda, and the Haqqani Network, and they ask this Court to attach certain funds held by the Fund and the World Bank allegedly belonging to the central bank of Afghanistan. Before the Court is the Fund's Motion to Quash Service of Process, Dkt. 14, and the World Bank's Motion to Quash Writ of Attachment, Dkt. 19. Because the Court lacks jurisdiction to attach the funds, it will grant the motions.

**I.    BACKGROUND**

    On March 20, 2020, the plaintiffs brought suit against the Taliban, Al-Qaeda, and the Haqqani Network in the U.S. District Court for the Northern District of Texas. Compl., *John Does 1 through 7 v. Taliban*, No. 20-cv-00605, at 1 (N.D. Tex. Mar. 20, 2020), Dkt. 1. They alleged damages as the result of a terrorist attack committed jointly by the Taliban, Al-Qaeda, and the Haqqani Network. *Id.* On November 5, 2020, the court entered a default judgment in favor of the

plaintiffs for $138,418,741.  Final Default J., *John Does*, No. 20-cv-00605, Dkt. 22.  On December 9, 2020, the court granted the plaintiffs' Motion for Issuance of Writs of Execution and issued the writs.  Order, *John Does*, No. 20-cv-00605, Dkt. 25; Writs of Execution, *John Does*, No. 20-cv-00605, Dkt. 27.  The writs applied to "goods and chattels, lands and tenements" and "blocked assets" of the Taliban, Al-Qaeda, and the Haqqani Network or "any agency or instrumentality thereof."  Writs of Execution at 2.

In August 2021, The Taliban took control of Afghanistan and soon after took control of Afghanistan's government-owned central bank, Da Afghanistan Bank.  Pls.' Resp. to Fund's Mot. to Quash Service of Process at 5, Dkt. 20.  The plaintiffs allege that both the Fund and the World Bank had planned to disburse funds to Da Afghanistan Bank, but froze those disbursements when the Taliban took over the country.  *Id.* at 6.  The plaintiffs thus allege that the Fund and the World Bank hold blocked assets of the Taliban, and they attempt to attach those assets to satisfy the default judgment.  *See* Resp. to Praecipe at 1, Dkt. 9; Pls.' Resp. to World Bank's Mot. to Quash Writ of Attach. at 6–7, Dkt. 21.

On August 20, 2021, the plaintiffs registered the default judgment with this Court, Dkt. 1, and the clerk issued a writ of attachment applicable to both the Fund and the World Bank, Dkt. 2. The plaintiffs attempted to serve both defendants with the writ, and when other forms of service failed, they left service documents at the feet of security guards at the Fund and World Bank offices in Washington, D.C.  *See* Aff. of Service of Writ of Attach. on the Fund at 1, Dkt. 4; Aff. of Service of Writ of Attach. on the World Bank at 1, Dkt. 5.  On October 12, the plaintiffs moved for final judgment, claiming that Federal Rule of Civil Procedure 6 and D.C. Code § 16-526(b) required that judgment be entered for them because the Fund and the World Bank failed to answer interrogatories.  Mot. for Final J. at 3, Dkt. 6.

The Fund responded by asserting its "immunity from every form of judicial process" under its Articles of Agreement, the Bretton Woods Agreements Act, and the International Organizations Immunities Act.  Praecipe Regarding Immunity at 1, Dkt. 8; *see also* Fund's Mot. to Quash Service of Process, Dkt. 14.  The World Bank likewise asserted its immunity from suit.  *See* World Bank's Mot. to Quash Writ of Attach, Dkt. 19.

## II.   LEGAL STANDARDS

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (citation omitted).  If a defendant is immune from suit, the district court must dismiss the action for lack of subject matter jurisdiction.  *Zuza v. Off. of High Representative*, 107 F. Supp. 3d 90, 93 (D.D.C. 2015), *aff'd* 857 F.3d 935 (D.C. Cir. 2017).  These "principles of . . . immunity apply with equal force to attachments and garnishments."  *Peterson v. Republic of Iran*, 563 F. Supp. 2d 268, 272 (D.D.C. 2008); *see also Aidi v. Yaron*, 672 F. Supp. 516, 517 (D.D.C. 1987) ("It is axiomatic that if jurisdiction is not available, then service of process is void, making a motion to quash service of process a valid remedy.").

In determining whether it has subject matter jurisdiction, a court may consider pleadings, "undisputed facts evidenced in the record," and "the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Although a court must determine jurisdiction before ruling on the merits, the court "has leeway to choose among threshold grounds

for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007) (citation and internal quotation marks omitted).

**III.    ANALYSIS**

Both the Fund and the World Bank enjoy general immunity from suit in United States courts, stemming from two sources. First, both organizations' Articles of Agreement provide for their immunity from suit. The Fund's Articles state that it "shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract." Articles of Agreement of the Int'l Monetary Fund art. IX, § 3, Dec. 27, 1945, 60 Stat. 1401. And the World Bank's Articles provide for its immunity in all but limited circumstances. *See* Articles of Agreement of the Int'l Bank for Reconstruction and Dev. art. VII, §§ 3–4, Dec. 27, 1945, 60 Stat. 1440. Both immunity provisions were given "full force and effect in the United States" by the Bretton Woods Agreements Act. 22 U.S.C. § 286h.

Second, both the Fund and the World Bank have been designated as "public international organizations entitled to the privileges, exemptions, and immunities conferred by the" International Organizations Immunities Act (IOIA). Exec. Order No. 9751, 11 Fed. Reg. 7713 (July 13, 1946); *see also Mendaro v. World Bank*, 717 F.2d 610, 613 (D.C. Cir. 1983). Under the IOIA, they "enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments," unless expressly waived. 22 U.S.C. § 288a(b). The immunity conferred under the IOIA is coextensive with that of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1609. *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 772 (2019). Because of the Fund's and the World Bank's broad immunity under both the IOIA and the Bretton Woods Agreements Acts, the Court lacks subject matter jurisdiction over them unless an exception or waiver to immunity

applies.  *See Nyambal*, 772 F.3d at 279, 280–81 (D.C. Cir. 2014) (discussing the Fund's broad immunity absent express waiver).

The plaintiffs argue that there is an exception to immunity here, found in the Terrorism Risk Insurance Act of 2002 (TRIA), Pub. L. No. 107-297, 28 U.S.C. § 1610 (note).  *See* Pls.' Resp. to Fund's Mot. at 10–13; Pls.' Resp. to Bank's Mot. at 9–18.  The TRIA authorizes attachment on "the blocked assets of [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)" to satisfy judgments for compensatory damages, "[n]otwithstanding any other provision of law."  TRIA § 201.  It was passed to enable recovery of judgments obtained under the FSIA's "terrorism exception" to foreign sovereign immunity.  *Bank Markazi v. Peterson*, 578 U.S. 212, 217 (2016); *see also* 28 U.S.C. § 1605A (abrogating foreign sovereign immunity when "money damages are sought against a foreign state for personal injury or death that was caused by" terrorist activities).

As an initial matter, the parties dispute the TRIA's applicability to international organizations as opposed to foreign sovereigns, as well as how the TRIA interacts with the IOIA and the Bretton Woods Agreement.  But the Court need not resolve that dispute, because even if the TRIA applies to the Fund and the World Bank, it does not cover the assets in dispute here.  By its terms, the TRIA only applies to "assets of [a] terrorist party" or "any agency or instrumentality of that terrorist party."  28 U.S.C. § 1610 (note)*.*  The assets here are not terrorist assets.

At issue are funds that the Fund and the World Bank would have disbursed to Afghanistan but froze after the Taliban takeover of the country.  *See* Pls.' Resp. to Fund's Mot. at 6–7; Pls.' Resp. to Bank's Mot. at 6.  Specifically, the plaintiffs point to assets in the World Bank's Afghanistan Reconstruction Trust Fund, Pls.' Resp. to Bank's Mot. at 11, and in the Fund's Special Drawing Rights or "international reserve assets ('SDRs')," Resp. to Praecipe at 1.  According to

the plaintiffs, the assets "belong[] to the Islamic Republic of Afghanistan and [are] payable to Da Afghanistan Bank." *Id.*

At the outset, there is serious reason to doubt that the funds belong to Afghanistan. As the Fund and the World Bank have explained, their organizations do not "hold assets of" any member country or private entity. World Bank's Mot. at 10; *see also* Fund's Mem. at 4 n.3. The Afghanistan Reconstruction Trust Fund, for instance, is not comprised of Afghanistan's own money, but "member donor money administered by the Bank to support Afghanistan." World Bank's Reply at 6, Dkt. 22 (emphasis omitted). And even if the funds were destined for Afghanistan, the D.C. Circuit has held that funds payable, but not yet transferred, to a terrorist organization are not assets "*of*" the organization. *Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 938, 940–41 (D.C. Cir. 2013) (emphasizing that the TRIA requires "ownership").

But even accepting arguendo the plaintiffs' position that Afghanistan has an ownership interest in future aid to be disbursed to it, the plaintiffs' theory still falls short. The United States has not recognized the Taliban as the legitimate government of Afghanistan. And the Court defers to the "political department of the government" on that front. *Guar. Tr. Co. of New York v. United States*, 304 U.S. 126, 137–38 (1938); *see also Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 18–19 (2015). So even if the funds are the property of the Afghanistan government, American courts will not recognize an ownership claim by the Taliban.[1] For both these reasons, aid money held by the Fund and the World Bank and not yet distributed to Afghanistan is not a terrorist asset.

---

[1] Nor is it relevant that the Taliban "exercises . . . control of Da Afghanistan Bank." Pls.' Resp. to Bank's Mot. at 14–16; *see also* Pls.' Resp. to Fund's Mot. at 5, 12–13 (arguing that Da Afghanistan Bank is an "agency or instrumentality" of the Taliban). Nowhere do the plaintiffs claim that Da Afghanistan Bank owns the assets. The plaintiffs instead assert that the assets "*belong[] to the Islamic Republic of Afghanistan* and [are] payable to Da Afghanistan Bank." Resp. to Praecipe at 1 (emphasis added). For the reasons explained, funds belonging to the government of Afghanistan

In sum, the plaintiffs have not shown that the assets at issue fall under the TRIA. Because the plaintiffs have not shown that an exception to the Fund and the World Bank's immunity applies, this Court does not have subject matter jurisdiction and grants the motions to quash.

## CONCLUSION

For the foregoing reasons, the Fund and the World Bank's Motions to Quash are granted. An order consistent with this decision accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

September 8, 2022

---

are not terrorist assets—regardless of whether the bank in which the Afghanistan government would have held the assets (had it received them) is now controlled by the Taliban.